Three minutes for rebuttal. My name is Terry White and I represent Linda Faulkner, the appellant in this case. If I could just take a moment here. Ms. Faulkner is a 60-year-old African-American female who worked at Douglas County Corrections. She wants nothing more than to go back and do her job as she knew it is something that she is more than qualified and able to do. Ms. Faulkner's case today reserves two issues at least with respect to questions of material fact having to do with disability discrimination in employment cases. The first issue is whether or not Douglas County Corrections job description for a correctional officer to a CO2 for the essential functions of a CO2 position. To state a claim, Ms. Faulkner needs to show that she could perform the essential functions of her position and it is our position that the essential functions of the position for a CO2 were not contained in the are accurately contained in the job description which provided the entire basis for Dr. Foxhall's decision to end Mrs. Faulkner's employment. And Dr. Foxhall is in charge at Douglas County Corrections. In fact, a job description cannot be the only basis for a job, excuse me, a job description cannot be the only basis on which the essential functions of a position are determined. That's this court's holding in Benson 2000. In fact, the job descriptions and the essential functions must accurately reflect reality. What the actual job was that was performed when it was occurring. Not just the theoretical, this is what we want our employees to do. And CFR 29, 29 CFR 1630 identifies the evidence that can be considered in determining what the employer's judgment. The others, however, are the written job description. Here, one that was prepared by the employer so it can be modified and set up to include functions that are less than essential from our perspective. And also the CFR identifies time spent on the actual position, on the actual function, the current experiences of the incumbents in the position. According to Dr. Foxhall in his deposition testimony, all of the job functions stated in the job description were required. No exceptions. Period. End of story. However, when Ms. Faulkner's experience is considered as a correctional officer too, she spent and testified to, undisputedly, that she spent four years on regular duty, not light duty, in the central control area or in the bubble. The bubble is the area in which the housing units are monitored. Central control, like the bubble, are locked down. There's no access for an So, four years without light duty, Ms. Faulkner was assigned to those positions. Now, however, when she wants light duty, she can't be there. So what she actually did as her functions, her essential functions, had nothing to do with her job description. Well, counsel, the fact that there's a requirement of your job that you use infrequently doesn't mean that it isn't essential to being able to be in the position. I think, your honor, though, if you apply the analysis of this court, and as stated in Barnes, that it has to reflect the actual performance of the job, not just the stated functions that the employer requires. Because those functions were drafted by the employer, so it can be set up to serve their The principal evidence is that of Mrs. Faulkner, and that is four years without. I understand you're giving what her experience was, but I'm talking about the experience of all in the same position. There is not, your areas, and one of those individuals demonstrates the inequity or the unequal application of the employer's rules. For instance, the collective bargaining agreement and the DC policies require that there be a 90-day limitation to light duty, followed by one extension for a similar 90-day period. However, there's deposition testimony identified in the record that one of the was on light duty in those positions for over 240 days. The defense has argued that in fact it was only 176 days, but I would submit that in the context of this particular case, the number of days and the disagreement over those facts is a material dispute over fact. While it may be only a matter of days, it is very significant here and resulted in Mrs. Faulkner not being allowed to return to her position because the crafted essential functions in her job description couldn't be met. Well, counsel, you're seeking that Douglas County provide her some light duty so that she can work full-time. Is that the I noticed in the record that she had a workman's compensation claim. At this time, does she have permanent partial disability that runs from that claim, for instance, or not? At the time, as of today, I cannot speak to that, Your Honor, but as of the time of this decision, her worker's comp claim had not even been and I'll address that right now. Another problem, in addition to the essential function issues, is the failure of Douglas County to engage in an interactive process to discuss what reasonable accommodations are. Mrs. Faulkner requested meetings repeatedly with respect to discussing her potential accommodations. Her worker's comp counselor requested of the staff that they be allowed to discuss the accommodations. What's the interaction of the CBA and the potential for accommodation? Both the CBA and the policy for Douglas County allow for accommodations of 90 days followed by a second 90-day period of accommodation. But, as I said, there's evidence in the record that there are employees who exceeded that and, in fact, other than the one individual who was identified, there are other instances in which employees would game the system by taking 90 days, getting a second 90-day period, and then go back to regular duty for a day or two and then go back on to another 90-day followed by a second 90-day. Mrs. Faulkner didn't do that. She played it upright. She played the game straight and she has paid the price for it. With respect... You're bringing this action under the Nebraska Fair Employment Practices Act and you're contending that she's being retaliated against? Is that where we are here? That is one of the claims, yes. Douglas County disputes that and claims that her filing for disability and was not akin to a protected activity and I cannot think of anything more protected than making a claim with respect to a disability, the very crux of her discrimination claim. There were two instances in which Douglas County claimed that there was an interactive process. One was an employee review meeting in October and when that meeting was convened, Douglas County canceled the meeting to its full fruition because at that point, Mrs. Faulkner had not even had her surgery yet. It was so far in advance of her being able to determine or Douglas County being able to determine what she could do that the meeting was canceled. There was no interactive process at all. The second meeting was in January of 2014 and that was a pre-termination meeting. Mrs. Faulkner said that was what it was for but in fact, when she was questioned at that meeting whether she could perform the essential functions of her position, which as you know, we can test that they are not the essential functions based on past experience, she said she could not at that time because she was still under a doctor's care. So there was again no opportunity for an interactive process at that time because she was still under a doctor's care. The fact that she was under a doctor's care made any discussion of accommodations premature and I do not believe there's no authority that the employer, excuse me, the employee is required to request a that she has a disability and there's no dispute about that and that there must be an interactive process. There was never any give-and-take. There was nothing on the side of the employer, Douglas County here, that even suggested we could discuss this and try to come up with something that would satisfy our policies, satisfy the collective bargaining agreement, nothing. Dr. Foxhall said it's in the job description, it's required. End of story. And this court's authority, I believe it is from a 2000 case, Benson, it is prima facie evidence of bad faith when an employer refuses to engage in the interactive process. There was never any discussion with Ms. Faulkner by Douglas County of what there do that would accommodate her needs and still satisfy her employers requirements. She had for years done exactly that, done exactly the job that she wanted to be put back into, either control, central control, or in the bubble. Dr. Foxhall said no, despite the fact that the injured on duty committee at one point agreed that she should be reinstated, he said no, absolutely not. It's in the job requirements, it's written down, it has to be done. Counsel, you're in your rebuttal time. You can continue if you like or you can reserve it. I'll conclude for now. Thank you, Your Honor. Thank you. Mr. Pinkham? Good morning, Your Honors. May it please the court, my name is Jimmy Pinkham and I'm here on behalf of Douglas County, Nebraska. I'd like to clarify a few items for this court. First of all, with regard to the essential functions of the job of corrections officer 2. That question has come up during this dialogue. However, which essential functions are being disputed was not discussed. The job description does include a number of essential functions. That job description is page 262 to 264 of the record and Douglas County relies on both that as well as the testimony of Dr. Foxhall, as well as the consequences of not performing that duty. The two duties that are disputed by Ms. Faulkner are inmate contact as a corrections officer 2, inmate contact and a 350 pound team lifting requirement. No other essential functions of the job are disputed at all by Ms. Faulkner and the district court specifically referenced those in its in its original memorandum or excuse me in its memorandum to the motion for specifically there's lifting requirements, pushing and pulling requirements that Ms. Faulkner would be required to participate in as a corrections officer 2. As to the inmate contact portion with those essential functions, it's undisputed Ms. Faulkner stated in her deposition before the workers' compensation trial on numerous occasions that yes, inmate contact, restraining a combative inmate, protecting others, that is an essential function or as she put it, a requirement of being a corrections officer 2. Additionally, Ms. Faulkner testifies in her deposition that she saw other correctional officers involved in inmate contact. That's undisputed. The other piece that I would say, in the record your honors, no there's no specific reference to how many inmate contacts occur a year or every month. What we can say is that in 2012 leading up to these events and what ultimately caused this lawsuit were two inmate contact incidences involving Ms. Faulkner. One in which she protected an individual in a medical mod from being assaulted by an inmate. The other thing that I'd like to clarify your honor, the reason this question even came up with regard to her disability and the essential functions is because Ms. Faulkner prior to her termination had a functional capacity evaluation as a result of the workers compensation proceedings and in that functional capacity evaluation she was given permanent medical restrictions, maximum medical improvement, permanent medical restrictions, for amongst other things I believe it was degenerative disc disease. Okay, which is very similar to the Scruggs v Polanski case where Ms. Scruggs also had degenerative disc disease. Counsel is it your position that there's nobody else at work at Douglas County corrections that do not, cannot perform all of the essential functions of the jobs there? Douglas County isn't saying that because Douglas County does have an accommodation that is required to comply with under the collective bargaining agreement with FOP 8. That accommodation, an accommodation that was specifically bargained for by the FOP is for light duty and light duty there's specific positions enumerated in the collective bargaining agreement and in the policies and procedures that allow an individual to work less risky or less risk averse situations or positions at the correctional facility like central control, like the bubble, positions where there is generally less inmate contact. However, those light duty positions are temporary positions. There is a red herring when certain individuals receive light duty. If it's true that Douglas County has given more than 180 hours of light duty to an individual, if any of those individuals are mentioned in the record like Ms. Jenny Lane for example, it's a red herring. That individual is not similarly situated to Ms. Faulkner. Ms. Faulkner had permanent medical restrictions, maximum medical improvement. Ms. Lane returned back to work full duty after her light duty. Ms. Faulkner had permanent restrictions that Douglas County could not ignore. So yes, your honor, there are light duty positions available at Douglas County Department of Corrections that individuals fill on a temporary basis, but none of those are full. Does her workman's compensation insurance provide her some money for these disabilities that were determined during the comp claim? It's a complicated answer, your honor. It was a lengthy trial that resulted in Ms. Faulkner ultimately receiving vocational rehabilitation. However, the judge determined that she was not, that her injuries were not on work or on duty injuries because they were injuries that were exacerbated by those inmate contacts because she was involved in a motor vehicle accident prior to those inmate contacts. Now with regard to the accommodations, there's no discussion today about what accommodations are available, what accommodations are not available. The only accommodation for the purposes of this appeal, the only accommodation that's discussed is a permanent light duty position and that would be placing Ms. Faulkner into central control where she says that she was there for four years. In her interrogatory she said three years and then in her deposition she said four years. There's no dispute that she may have been in central control for four years because there's no dispute that she was in regular duty for four years. And per the testimony in the court, both Foxall's deposition, page 132 of the record, lines 9 through 13, as well as Karen Biederman's deposition, page 907, lines 9 through 22, and page 916, lines 11 through 16, there's a discussion that even individuals working in central control under regular duty can be bumped out of that position and put into another position where they would be at risk of inmate contact, but bumped by light duty individuals. So the preference on the collective bargaining agreement, individuals who are temporarily ill or temporarily injured receive preference for those light duty positions. And even in the record, Ms. Faulkner testifies, page 1204, lines 14 through 18, when she's asked by her own counsel, so you're saying that you worked every day in central control for four years? Ms. Faulkner hesitates and says, well if there were extreme cases, but yes I was the primary. That would jive, obviously, with the policies and procedures, the testimony from Dr. Foxall, and the CBA preference for temporarily ill and temporarily injured individuals. Now there's another point that should be made with regard to the interactive process. First of all, this circuit has recognized numerous times, and of course recently in Fadley, just last week, this court recognized that there's a good faith, bad faith question that's part of the interactive process test. And in this case, not only did Douglas County participate in the good faith interactive process, but just as in Fadley, there's no bad faith in engaging in that interactive process. So in this case, we do have on the record two letters that were sent to Ms. Faulkner, and we know from case law that letters are not good enough necessarily to be a full gambit of interactive process. However, that Douglas County Employee Review Committee meeting in October of 2013, four months before her termination, that meeting was set off because Ms. Faulkner stated that she had accommodations she wanted. Dr. Foxall was the one who sent the letter that asked if she had any accommodations that she could think of, and they did have that meeting. There are notes on the record from Janice Johnson, the individual who's in charge of workers compensation down at Douglas County. If you look to page 287 to 289 of the record, there are notes from the DCERC meeting. We have testimony from Ms. Faulkner that she specifically asked for a job with the DMV, which is not a Douglas County position. She asked for central control permanently, light duty permanently, the lobby permanently. Okay, it took four months before she was terminated. There's a reference in the record that Douglas County had already made the decision to terminate her before the DCERC meeting. That's obviously not true. Four months before she's terminated. In that time, she has the surgery, does not recover. For the record, Your Honor, there were three FCEs done on Ms. Faulkner, all with the same results. Permanent medical restrictions, light to light medium, requiring lifting, pulling, and pushing restrictions. Again, there's no question that Douglas County engaged in the interactive process. Even if it had not engaged in the interactive process, this court has recognized a number of times, including in Scruggs v. Pulaski County, that unless there are reasonable accommodations available, then any discussion of an interactive process is superfluous. And that's a quote from Drupinski v. Douglas County. If you consider the fact that in this case, today in this room, there was hardly any discussion about accommodations, what available accommodations are being alleged. When you consider the fact that the accommodations that are being alleged either violate the collective bargaining agreement by giving preference to someone who is not temporarily ill or temporarily injured, would require us to turn a temporary position into a permanent position, would require us to eliminate essential functions of the job by placing her into central control permanently and not requiring her to answer any codes or anything like that. If you consider all of those facts, there are no reasonable accommodations available. And Scruggs v. Pulaski County makes a point of saying, it is the plaintiff's burden to show the were available to her. If you look at, for example, the Cravens v. Blue Cross Blue Shield case from Kansas City, an Eighth Circuit case from, I believe, 2000, in that case, it was determined that the interactive process was done in bad faith. The facts of that case, Your Honor, the individual requested accommodations, requested vacant jobs, knew of a vacant job, asked for help to was not helped. Ultimately, through discovery, Cravens found ten vacant positions available to her. Ten. So the question of the interactive process went all the way through and they said you did not engage in the good faith interactive process because there were reasonable accommodations available that you could have found had you participated in good faith. In this case, there are no reasonable accommodations available. Douglas County did engage in the good faith interactive process. Now, Your Honor, you asked about retaliation. That claim has been abandoned by Ms. Faulkner. It was not mentioned in the reply brief to Douglas County's motion for summary judgment. It was not mentioned in the motion for rehearing and it was not motioned in any of the filings before the Eighth Circuit. So retaliation is not at issue. What is at issue, however, is a question of age and gender discrimination, which was not discussed here. The question about age and gender discrimination involved Douglas County's alleged failure to reference age and gender discrimination in its brief and supporting facts. The fact that Ms. Faulkner provided eight potential comparators, Douglas County countered in its motion for summary judgment filings with detailed descriptions of why those individuals are different than Ms. Faulkner or why they are similar and were treated the same. Of the eight individuals that Ms. Faulkner referenced as being discriminated against based on either age or gender, seven of them ultimately returned to work full duty with no restrictions. Douglas County could not do that for Ms. Faulkner because she received permanent medical restriction, as this court has stated multiple times. You do not have to accommodate an individual who has permanent medical restrictions by ignoring that doctor's medical restrictions for another doctor. The other issue is that in those similarly situated individuals, one of them also had permanent medical restrictions and was terminated from her employment at Douglas County. Then Douglas County countered again in the facts and in the argument, and in fact if you look to page 61 through 62 of the brief of Douglas County in the record and page 81 through 88, there's a discussion of an additional five comparators who also had permanent medical restrictions and were terminated from their employment. With that, your honors, Douglas County respectfully requests that this court determine that the district court was correct in determining that Ms. Faulkner cannot meet the prima facie case for either disability, age, or gender discrimination. Thank you very much, your honors. Thank you, Mr. Pinkham. Ms. White. Mr. Pinkham went on at length about how Douglas County has fulfilled its requirements with respect to the interactive process significantly. However, he did not ever identify any particular circumstance in which that occurred, and as I stated earlier, there were two meetings which potentially could have satisfied that. One was cut short and the other was a termination meeting. In fact, Douglas County has failed to discuss with Ms. Faulkner possible accommodations that were available and appropriate. There was no discussion about that. They cite the fact that she requested initially extended light duty. It's what she had been provided as her regular duty. It did not occur in this case by the county or discovered by Ms. Faulkner where Douglas County attempted to identify any potentially effective accommodations, and as a result, there was no interactive process. The use of the word interactive is completely not applicable to the process that went on here. She didn't have surgery yet and she was terminated, and that fails to satisfy the standard for an interactive process. Thank you. Thank you, Ms. White. Thank you also, Mr. Pinkham.